IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DE LAGE LANDEN FINANCIAL
SERVICES, INC.,

                Plaintiff,

      v.

PICASSO AESTHETIC AND COSMETIC
DENTAL SPA, P.A.
and
JEFFREY RUBIN,

             Defendants.

CIVIL ACTION
NO. 14-2240

## OPINION

**Slomsky, J.**　　　　　　　　　　　　　　　　　　　**March 25, 2015**

## I.　　Introduction

Before the Court is Plaintiff De Lage Landen Financial Services, Inc.'s Motion for

Judgment on the Pleadings only with respect to Defendant Jeffrey Rubin.[1]  (Doc. No. 6).  Rubin

---

[1]  In the Motion for Judgment on the Pleadings, Plaintiff requested that judgment be entered in favor of Plaintiff and against Rubin on Counts II, IV, and V of the Complaint and against Picasso Aesthetic and Cosmetic Dental Spa, P.A. ("Picasso") on Counts I to V of the Complaint.  (Doc. No. 6.)  Upon review of the record at that point, it was discovered that Picasso was not represented by counsel.  As explained in note 2, infra, Picasso is a North Carolina corporation.  As such, "[t]he rule is well established that a corporation can appear in a court of record only by an attorney at law."  Simbraw v. United States, 367 F.2d 373, 374 (3d Cir. 1966) (citation and internal quotation marks omitted); see also Osborn v. Bank of the United States, 22 U.S. 738, 830 (1824).  An individual, though, may appear for himself. Osborn, 22 U.S. at 830.  Rubin, who does not claim to be an attorney, has entered his appearance in this case on behalf of himself.  He cannot represent Picasso.

Upon noticing that Picasso was served with the Complaint, was not represented by counsel, and did not file a timely Answer, the Court ordered that a telephone conference be held with Plaintiff's counsel and Rubin on February 11, 2015.  (Doc. No. 12.)  Neither Rubin nor anyone else participated at this telephone conference on behalf of Picasso, despite the Court's Order and numerous attempts made by the Court to contact Rubin.  After the telephone conference, Plaintiff filed a Request for Default against Picasso pursuant to Federal Rule of Civil

is a dentist and the sole owner of Defendant Picasso Aesthetic and Cosmetic Dental Spa, P.A. ("Picasso").[2]  (Doc. No. 1 ¶¶ 2-3.)  Plaintiff's claims against Rubin are asserted in Counts II, IV, and V of the Complaint.  For reasons that follow, the Motion will be granted and Judgment will be entered against Rubin on Counts II, IV, and V.

## II.    Background

Plaintiff is a corporation organized under the laws of the State of Michigan with a principal place of business in Chester County, Pennsylvania.  (Doc. No. 1 ¶ 1.)  Defendant Rubin is an adult individual residing in Fort Meyers, Florida.  (Id. ¶ 3.)  Rubin is the sole owner of Picasso, a professional corporation formed under the laws of the State of North Carolina with a principal place of business in Naples, Florida.  (Id. ¶¶ 2, 3.)  Picasso is also a named Defendant in this case.

On March 1, 2010, Plaintiff and Picasso executed a Loan Agreement under which Plaintiff agreed to lend Picasso $25,000 for working capital and in return Picasso agreed to repay Plaintiff with sixty monthly payments of $520.41, plus interest and applicable sales tax.  (Id.

---

Procedure 55(a), since Picasso had failed to answer or otherwise defend against the Complaint. (Doc. No. 14.)  On February 13, 2015, the Clerk of Court entered a default against Picasso and Plaintiff then sought a default judgment.  (Doc. No. 15.)  On February 26, 2015, the Court ordered Picasso to show cause at a hearing to be held on March 20, 2015 as to why a default judgment should not be entered against Picasso and damages assessed.  (Doc. No. 17.)  On February 27, 2015, Plaintiff served a copy of the Court's Order upon Picasso and Rubin by certified mail. (Doc. No. 18.)  At the hearing on March 20, 2015, no one appeared on behalf of Picasso.  On March 20, 2015, the Court granted Plaintiff's Application for Default Judgment, and entered judgment on Counts I to V in favor of Plaintiff and against Picasso and assessed damages in the amount of $100,136.20.  (Doc. No. 21.)

[2] Picasso is identified on the docket and in the pleadings as a "P.A.," which stands for "professional association."  Pursuant to the North Carolina Professional Corporation Act, a professional corporation may identify itself as a "Professional Association" or "P.A.," and professional corporations "shall enjoy the power and privileges and shall be subject to duties, restrictions and liabilities of other corporations, except insofar as the same may be limited or enlarged by [the Professional Corporation Act]."  N.C. Gen. Stat. Ann. §§ 55B-3, 55B-5 (West 2014).  The Court therefore considers Picasso to be a corporation under North Carolina law.

¶¶ 17-20; Ex. E.)  In connection with the Loan Agreement, Rubin executed a Personal Guaranty "absolutely and unconditionally guarantee[ing]" all payments under the Loan Agreement.  (Id. ¶ 22; Ex. G.)

On March 25, 2010, Plaintiff and Picasso entered into a Finance Agreement under which Plaintiff delivered to Picasso one E4D CAD/CAM Complete System[3] (the "Equipment") and Picasso agreed to make sixty monthly payments of $2,886.12, plus interest and applicable sales tax, to Plaintiff.  (Id. ¶¶ 7-9, Ex. A.)  The Finance Agreement contains a Personal Guaranty signed by Rubin, which states as follows: "To induce [Plaintiff] to enter this Finance Agreement, the undersigned unconditionally guarantees the prompt payment of [Picasso's] obligations under the Agreement."  (Id. ¶ 11, Ex. A.)

Under both the Loan and Finance Agreements, Picasso is considered in default when it fails to make required timely payments, and such default goes uncorrected for five days.  (Id. at Exs. A ¶ 6(a), E ¶ 6(a).)  According to the terms of the Agreements, upon default the balance of all unpaid payments for the full term, discounted at 3%, are immediately due and payable together with all past sums due, post-default interest at the rate of 18%, and attorney fees and costs.  (Id. at Exs. A ¶ 7, E ¶ 7.)  In addition, both Agreements provide that in the event of default Plaintiff may take possession of the Equipment and "sell, lease or otherwise dispose of [the Equipment] at a private or public sale . . . [and] [i]n the event [Plaintiff] disposes of the [Equipment], [Plaintiff] shall give [Defendants] credit for any sums received by [Plaintiff] from such disposal after deduction of the expenses of the disposition."  (Id.)

Beginning in October 2013, Picasso failed to make payments when due under both the Loan and Finance Agreements.  (Id. ¶¶ 13, 24.)  On February 12, 2014, Ken Jones, a

---

[3] The E4D CAD/CAM Complete System is dental equipment.

Litigation/Bankruptcy Specialist employed by Plaintiff, sent Rubin an e-mail informing him that Picasso had defaulted on both the Loan and Finance Agreements for failure to make payments when due, and that "[i]f appropriate arrangements are not made to resolve the default within 10 days [Plaintiff] will be accelerating the remaining balance on the contracts and forwarding to outside counsel to enforce the remedies with respect to the default, including litigation."  (Doc. No. 5 at 9.)

       Later that day, Rubin sent Jones a reply e-mail stating that he had been making payments since a year ago, "with a lag," directly to a person named John Dougherty, who apparently was one of Plaintiff's employees.  (Id.)  In the e-mail, Rubin claimed that Dougherty had failed to process two of his payments.[4]  (Id.)  Rubin concluded the e-mail by stating that he would make another payment by the upcoming Friday, that he was unable to pay off the entire balance due at that time, and that if Plaintiff needed to initiate legal action "then you will have to do what you have to do but I have been dealing with Mr. Dougherty for several months now."  (Id.)  Jones replied to Rubin's e-mail later that day, stating that Dougherty was no longer handling the account and that one payment per month would not cure the default.  (Id. at 8.)  Jones closed his e-mail by reiterating his invitation to Rubin to make appropriate arrangements to cure the default within ten days.  (Id.)

---

[4]  Rubin is not alleging that the processing errors referred to in his February 12, 2014 e-mail were the cause of Picasso's default under the Loan and Finance Agreements.  Moreover, Rubin does not deny that Picasso defaulted on these Agreements by falling behind on payments.  (See Doc. Nos. 5, 9.)  It appears that the processing errors Rubin refers to in his e-mail, which he refers to again in the Answer to the Complaint (Doc. No. 5), were made while Picasso was already in default under both Agreements.  As such, these two alleged processing errors do not absolve Rubin or Picasso of liability for breach of the Agreements.

On February 18, 2014, having not heard back from Rubin regarding arrangements to cure the default, Jones sent Rubin an e-mail requesting an update.  (Id.)  On March 6, 2014, Rubin sent a reply e-mail that stated as follows:

> After consulting with my attorney since you have harassed me into an ultimatum of not continuing my monthly payments as I was doing religiously, and because Mr. Dougherty actually made 2 times a mistake by not putting the payment I made by phoine [sic] correctly, she has advised me to advise you that we would like to surrender the equipment because there is no way we can make up the deficit at this time like I already noted.

(Id. at 7-8.)  Later that day, Jones sent Rubin an e-mail informing him that Plaintiff's asset management department would contact him to arrange the surrender and repossession of the Equipment as requested.  (Id. at 7.)  Thereafter, the Equipment was repossessed.  (Id. at 3.)  On March 6, 2014, Jones sent letters to Picasso and Rubin notifying them that the Equipment would be sold at a private sale to be held sometime after March 15, 2014, that they "are entitled to an accounting of the unpaid indebtedness secured by the property that is intended to be sold," and that they "may request an accounting by contacting [him] at the number [provided]."  (Id. at 5-6.)

On April 16, 2014, Plaintiff's counsel again sent letters to Picasso and Rubin notifying them of the defaults under the Loan and Finance Agreements and demanding payment of the amounts due under both agreements.[5]  (Doc. No. 1, Exs. C, D, H, I.)  In view of Rubin's long-time failure to cure the default, on April 17, 2014 Plaintiff filed the Complaint against Picasso and Rubin in this Court.  (Doc. No. 1.)  Plaintiff made the following claims in the Complaint: Count I—Breach of the Finance Agreement against Picasso; Count II—Breach of the Finance Agreement Guarantees against Picasso and Rubin; Count III—Breach of the Loan Agreement against Picasso; Count IV—Breach of the Loan Agreement Guarantees against Picasso and

---

[5]  As of April 16, 2014, Plaintiff was owed $72,537.48 under the Finance Agreement and $11,139.09 under the Loan Agreement.  (Doc. No. 1, Exs. C, D, H, I.)

Rubin; and Count V—Unjust Enrichment against Picasso and Rubin.  (Id. ¶¶ 28-46.)  Plaintiff requested compensatory damages, prejudgment interest thereon, attorney fees and costs, and such other relief that the Court deems equitable and just under the circumstances.  (Id.)

On May 27, 2014, the Court received a pro se letter from Rubin, which the Court considered to be his Answer to the Complaint.  (Doc. No. 5.)  On July 23, 2014, Plaintiff filed its Motion for Judgment on the Pleadings.  (Doc. No. 6.)  On September 9, 2014, having received no Response to Plaintiff's Motion, the Court entered an Order affording Rubin the opportunity to file a Response by September 30, 2014.[6]  (Doc. No. 7.)  On September 30, 2014, the Court received a pro se letter from Rubin, which the Court considered to be his Response to the Motion for Judgment on the Pleadings.  (Doc. No. 9.)  On October 8, 2014, Plaintiff filed a Reply in Further Support of its Motion for Judgment on the Pleadings.  (Doc. No. 10.)

On March 20, 2015, as explained in note 1, supra, the Court granted Plaintiff's Application for Entry of Default Judgment against Picasso, and Judgment was entered on Counts I to V of the Complaint in favor of Plaintiff and against Picasso.  (Doc. No. 21.)  As noted, remaining before the Court are Counts II, IV, and V of the Complaint against Rubin.  For reasons that follow, Plaintiff's Motion for Judgment on the Pleadings will be granted against Rubin on the remaining Counts.

---

[6] Under Local Rule of Civil Procedure 7.1(c), unless otherwise directed, a party opposing a motion shall serve a response within fourteen days of service of the motion.  In the absence of a timely response, the motion may be granted as uncontested except as provided under Federal Rule of Civil Procedure 56.  E.D. Pa. Loc. R. Civ. P. 7.1(c).  Under this Rule, Rubin was out of time to respond.  However, because Rubin was proceeding pro se, the Court decided that the interests of justice would be best served by affording him extra time to respond.  See Fed. R. Civ. P. 1.

### III.    Standard of Review

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  In deciding a motion for judgment on the pleadings, "the court may consider any of the pleadings, including the complaint, the answer, and any instruments attached to them."[7]  2 James Wm. Moore et al., Moore's Federal Practice § 12.38 (3d ed. 2014) (citing, e.g., Commercial Money Ctr., Inc. v. Illinois Union Ins. Co., 508 F.3d 327, 335 (6th Cir. 2007)).  A motion for judgment on the pleadings is analyzed under the same standard as a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  See Spruill v. Gillis, 372 F.3d 218, 223 n.2 (3d Cir. 2004) (explaining that "there is no material difference in the applicable legal standards" for Rule 12(b)(6) and Rule 12(c) motions).  Like a motion to dismiss, under Rule 12(c), "the trial court must view the facts in the pleadings in the light most favorable to [the nonmoving party] and must grant the motion only if the moving party establishes that no material issues of fact remains and that it is entitled to judgment as a matter of law."  Shelly v. Johns-Manville Corp., 798 F.2d 93, 97 n.4 (3d Cir. 1986).  A motion for judgment on the pleadings will only be granted where "the [nonmoving party] would not be entitled to relief under any set of facts that could be proved."  Green v. Fund Asset Mgmt., L.P., 245 F.3d 214, 220 (3d Cir. 2001).

### IV.    Plaintiff's Motion for Judgment on the Pleadings Will Be Granted Because Rubin Has Not Denied Plaintiff's Allegations and the Pleadings Confirm His Liability

Under Federal Rule of Civil Procedure 8(b)(6), "[a]n allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."  Fed. R. Civ. P. 8(b)(6).  A complaint requires a responsive pleading.  Fed. R. Civ. P.

---

[7]  Plaintiff attached the Loan and Finance Agreements, and the associated Personal Guarantees executed by Rubin, as Exhibits to the Complaint.  (See Doc. No. 1, Exs. A, E, G.)

12(a).  Therefore, any allegation in a complaint that a defendant does not deny is deemed admitted.

As detailed above, Plaintiff alleges in the Complaint that it entered into Loan and Finance Agreements with Picasso that were secured by Personal Guarantees given by Rubin.  (Doc. No. 1 ¶¶ 7-27.)  Pursuant to these Agreements, Picasso agreed to make certain monthly payments to Plaintiff.  (Id.)  Both of these Agreements contained clauses stating that Picasso shall be in default if it fails to pay the indebtedness when due, and such deficiency continues for five days. (Id. at Exs. A ¶ 6(a), E ¶ 6(a).)  According to the terms of the Agreements, upon default the balance of all unpaid payments for the full term, discounted at 3%, are immediately due and payable together with all past sums due, post-default interest at the rate of 18%, and attorney fees and costs.  (Id. at Exs. A ¶ 7, E ¶ 7.)  Additionally, in the event Picasso defaults under either Agreement, Plaintiff may take possession of the Equipment leased to Picasso and "sell, lease or otherwise dispose of [it] at a private or public sale . . . [and] [i]n the event [Plaintiff] disposes of the [it], [Plaintiff] shall give [Defendants] credit for any sums received by [Plaintiff] from such disposal after deduction of the expenses of the disposition."  (Id.)

Rubin does not deny in any of his filings (Doc. Nos. 5, 9) that Picasso defaulted on both the Loan and Finance Agreements and that he is personally liable for the amounts due pursuant to the Personal Guarantees he executed.   Rather, Rubin admits that Picasso fell behind on its payments, which constitutes a default under the Agreements.  (Doc. No. 5 at 1) ("In 2013 we had a couple months in the beginning where we fell behind on our payments."); (id. at 9) ("Over a year ago with a lag I am making payments directly to John Dougherty every month without fail."); (Doc. No. 9 at 1) ("In early 2013 when I began to have trouble making the payments

. . . .").[8]  Thus, even construing all facts in the light most favorable to Rubin, no material issue of

fact remains on the question of Picasso's default on the Loan and Finance Agreements and

Rubin's personal liability to Plaintiff by virtue of his Personal Guarantees.  Plaintiff is therefore

entitled to judgment on the pleadings against Rubin on Counts II, IV, and V of the Complaint.[9]

---

[8]  In the Response in Opposition to the Motion for Judgment on the Pleadings (Doc. No. 9), Rubin claims that "[a]t no point did [anyone] ever inform me I was in default nor that they would call the loans in full at any time."  This claim does not relieve Rubin or Picasso of liability for breach of the Agreements.  As explained above, Rubin admitted that he knew as early as 2013 that Picasso was behind on its payments.  (See Doc No. 5 at 1, 9; Doc. No. 9 at 1.)  Under the terms of both the Loan and Finance Agreements, which were signed by Rubin on behalf of Picasso, failure to make a payment when due constitutes a default when such failure persists for five days.  (Doc. No. 1, Exs. A. ¶ (6)(a), E ¶ (6)(a).)  The fact that Picasso was allowed to continue making payments for some time while in default also does not relieve Rubin or Picasso of liability.  Both Agreements contain a clause stating that Plaintiff does not waive any remedies under the Agreements by refraining to enforce them.  (Id. Exs. A ¶ 10(b), E ¶ 9(b).)  The clause reads as follows:

> Enforcement and Waiver by Lender.  Lender shall have the right at all times to enforce the provisions of this Agreement in strict accordance with the terms hereof and thereof, notwithstanding any conduct or custom on the part of Lender in refraining from so doing at any time or times.  The failure of Lender at any time or times to enforce its rights under such provisions, strictly in accordance with the same, shall not be construed as having created a custom in any way or manner contrary to specific provisions of this Agreement or as having in any way or manner modified or waived the same.  All rights and remedies of Lender are cumulative and concurrent, and the exercise of one right or remedy shall not be deemed a waiver or release of any other right or remedy.

(Id.)

In sum, Rubin knew that Picasso was behind on its loan payments and that this constituted a default if not cured within five days.  The Agreements also provided that Plaintiff could enforce its rights under the Agreements at any time even if it had previously refrained from doing so.  Rubin's claim that no one informed him that Defendants were in default and that Plaintiff would exercise its remedies under the Agreements does not relieve Rubin or Picasso of liability.

[9]  In Rubin's filings (Doc. Nos. 5, 9), Rubin claims that Plaintiff improperly failed to offset the amount Defendants owe under the Agreements by the value of the Equipment that Plaintiff repossessed for sale.  (Doc. No. 9.)  This argument does not bear upon whether Rubin and Picasso are liable for breach of the Agreements.  Rather, this argument addresses the damages

## V.      Conclusion

For the reasons stated, Plaintiff's Motion for Judgment on the Pleadings (Doc. No. 6) will be granted on Counts II, IV, and V against Rubin.  An appropriate Order follows.[10]

---

that should be awarded to Plaintiff.   As explained above, the Agreements provide that Plaintiff may "sell, lease or otherwise dispose of [the Equipment] at a private or public sale . . . [and] [i]n the event [Plaintiff] disposes of the [Equipment], [Plaintiff] shall give [Defendants] credit for any sums received by [Plaintiff] from such disposal after deduction of the expenses of the disposition."  (Doc. No. 1, Exs. A ¶ 7, E ¶ 7.)  This provision states that Defendants' account will only be credited after the Equipment is disposed of.  The record before the Court does not reveal whether the Equipment has been sold at this time.   Although the Court is awarding money damages against Rubin for the amounts due under the Agreements without an offset for the sale price of the repossessed Equipment, should the Equipment be sold in the future Rubin and Picasso are entitled to a credit for the sale price.

[10] Plaintiff seeks judgment against Rubin in the same amount that it received against Picasso in the Order granting a Default Judgment and assessing damages at $100,136.20.  (Doc. No. 21.) Plaintiff agrees that both Defendants' liability is joint and several, and that it can only collect this amount once.  Accordingly, since the Court has already reviewed at the hearing held on March 20, 2015 the propriety of the amount claimed as damages, plus attorney fees and interest, the same amount will be awarded in favor of Plaintiff and against Rubin.